[Crim. No. 9781. Fourth Dist., Div. Two. Apr. 16, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES CURTIS BALLARD, Defendant and Appellant.

COUNSEL

Tomlinson & Nydam, M. Stanford Tomlinson, Goldstone & Steed, Hilary F. Goldstone and Andrew Schepard for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, Daniel J. Kremer, Assistant Attorney General, Gary W. Schons and J. Richard Haden, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**GARDNER, P. J.**—We are called upon to consider the constitutionality of two provisions of the Political Reform Act of 1974. (Gov. Code, § 81000 et seq.) We conclude that the four-year prohibition in Government Code section 91002 against a person convicted of a misdemeanor under that act being a candidate for public office and the prohibition in Government Code section 84100, subdivision (c), against a candidate commingling campaign contributions and personal funds are both constitutional.

An indictment returned by the San Bernardino County Grand Jury accused James Curtis Ballard of two counts of perjury (Pen. Code, § 118) and two counts of commingling campaign contributions. (Gov. Code, §§ 84100, subd. (c), 91000.) A jury found defendant guilty of the two misdemeanor counts of commingling campaign contributions and he appealed from the judgment.

### TESTIMONY BY THE GRAND JURY ADVISER

■ Initially, defendant contends that testimony by the deputy district attorney who was the grand jury's legal adviser constituted prejudicial misconduct because it breached the California Rules of Professional Conduct and the American Bar Association's Code of Professional Responsibility and called into question the impartiality of the prosecutor's office and the grand jury.

During the People's case-in-chief, the grand jury legal adviser, San Bernardino County Deputy District Attorney William Timmerman, was called as a witness. The San Bernardino County District Attorney prosecuted this case and San Bernardino County Deputy District Attorney Kenneth Kloepfer was the trial deputy who appeared in court and conducted the trial.

Timmerman testified about his initial interview with defendant on October 15, 1976, following receipt of a complaint which began the investigation that resulted in the indictment, and a subsequent interview on October 21, 1976. The entire tape of the latter interview was played to the grand jury and introduced into evidence. He also testified about defendant's testimony during his first appearance before the grand jury on November 1, 1976. This testimony was read to the jury. Then Timmerman identified various documents defendant produced pursuant to a subpoena during his next two appearances before the grand jury.

Timmerman testified about a subpoena served on two banks to obtain defendant's financial records and identified various documents received in response to the subpoena. He related defendant's testimony before the grand jury on March 10, 1977. Finally, he described in detail his audit of defendant's bank account records.

There was no breach of canon 5 of the American Bar Association's Code of Professional Responsibility, which states: "A lawyer should ex-

ercise independent professional judgment on behalf of his client," as implemented by Ethical Consideration 5-9, which reads as follows: "Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively."

Timmerman was a witness and not the "advocate" in this case. Consequently, he was not "both counsel and witness."

Moreover, we note that the conduct of California attorneys is governed by the California Rules of Professional Conduct, not the American Bar Association's Code of Professional Responsibility.

Rule 2-111 (A)(4) of the California Rules of Professional Conduct[1] provided in pertinent part: "(4) If upon or after undertaking employment, a member of the State Bar knows or should know that he or a lawyer in his firm ought to be called as a witness on behalf of his client in litigation concerning the subject matter of such employment he shall withdraw from the conduct of the trial and his firm may continue the representation and he or a lawyer in his firm may testify in the following circumstances:

"(a) If the testimony will relate solely to an uncontested matter; or

"(b) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or

---

[1]Rule 2-111 (A)(4) of the California Rules of Professional Conduct was amended effective November 1, 1979, to provide, in pertinent part, that: "The member [of the State Bar] may continue employment and the client's consent [to continued employment] need not be obtained in the following circumstances: [¶] (d) If the member is representing the People, if the member obtains the consent of the head of the particular office representing the People, and if the member's continued representation is not inconsistent with the principles of recusal."

"(d) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

Defendant argues that Timmerman's testimony was a breach of this rule because a member of his "law firm," the San Bernardino County District Attorney's office, represented the People in this case.

We need not address this issue because defendant failed to object in any manner to Timmerman's testimony before the jury or to attempt to recuse the San Bernardino County District Attorney's office.

A claim of misconduct by the prosecution at trial will not be considered on appeal if it was not timely raised by the defense during trial absent a finding that the misconduct contributed to the verdict or was so unredeemable that nothing whatsoever would have cured it. (*People* v. *Strickland* (1974) 11 Cal.3d 946, 955 [114 Cal.Rptr. 632, 523 P.2d 672].)

This "misconduct," either the San Bernardino County District Attorney's prosecution of this case with knowledge one of his deputies would testify for the People or Timmerman's testifying when another deputy district attorney from his office was prosecuting the case, could have been "cured" by recusing the prosecutorial office of the San Bernardino County District Attorney or sustaining an objection to or a motion to strike Timmerman's testimony.

This alleged misconduct did not contribute to the verdict. Although defendant correctly points out that Timmerman was attempting to show that he was untruthful as to the facts behind the perjury counts, defendant was acquitted of those two charges. Timmerman's testimony concerning the two commingling of funds counts was cumulative.

### PROHIBITION ON RUNNING FOR OFFICE

Defendant contends that the Government Code section 91002 prohibition against being a candidate for any elective office for a period of four years following the date of the conviction is unconstitutional because it is a violation of the fundamental right to run for office and consequently, the trial court abused its discretion in failing to specifical-

ly determine at the time of sentence that this provision was not applicable to him.

Government Code section 91002 provides that no one convicted of a misdemeanor under the Political Reform Act of 1974 shall be a candidate for any elective office for a period of four years following the date of the conviction *unless* the court *at the time of sentencing* specifically determines that this provision shall not be applicable.

On November 2, 1977, the trial court denied probation, sentenced defendant to pay a fine of a total of $1,250 on both counts, and specifically stated that the provisions in Government Code section 91002 prohibiting defendant from being a candidate for any public office for four years from the date of his conviction was not waived.

After this case was fully briefed by the parties, defendant filed a supplemental reply brief on December 4, 1979, in which he alleged this issue was "moot" because the provision that prohibited him from being a candidate for public office had been stayed by the superior court on August 24, 1979, while this appeal was pending in our court, and he had been elected to the San Bernardino Community College Board on November 6, 1979.

`We ordered defendant to provide us with a record of the hearing below during which the trial court allegedly stayed this portion of his sentence and allowed the deputy attorney general time to file a response.

At the third oral argument in this case on April 1, 1980, defendant withdrew his contention that this issue was moot. Consequently, we must determine whether the trial court abused its discretion in failing to specify that the prohibition against being a candidate for elective office for a period of four years should not be applicable to defendant because the right to run for office is a fundamental constitutional right, depriving him of this right did not further a compelling state interest and less restrictive alternatives were available.

Initially, we note that in *Fair Political Practices Com. v. Superior Court*, 25 Cal.3d 33 [157 Cal.Rptr. 855, 599 P.2d 46], filed on August 23, 1979, our Supreme Court upheld the constitutionality of the Political Reform Act of 1974 because it did not violate the one subject limitation imposed by California Constitution, article II, section 8, sub-

division (d). In this review of an order enjoining enforcement of the entire act, the court found specific provisions of the act concerning lobbyist contributions and disclosure of irrelevant private financial matters invalid. The court did not specifically address the validity of the statutory provisions before us.

The People concede that the right to hold public office is a fundamental right and restrictions upon its exercise must be strictly construed. (*Thompson* v. *Mellon* (1973) 9 Cal.3d 96, 99 [107 Cal.Rptr. 20, 507 P.2d 628, 65 A.L.R.3d 1029].) The questions presented here are whether (1) the state has established it has a compelling interest which justifies the law and (2) the distinctions drawn by the law are necessary to further its purpose.

The Political Reform Act mandates the full and truthful disclosure of campaign receipts and expenditures. Accurate record keeping is an essential prerequisite to such disclosure. The act's enforcement provisions must contain sufficient penalties to achieve this goal. The four-year disqualification protects the public from candidates convicted of violating the act just as imprisonment protects the public from further violent acts committed by persons who have been convicted of violent crimes.

The state has a compelling interest in protecting the public from persons who have been convicted of misdemeanor violations of the Political Reform Act and deterring others from violating the act which justifies the four-year disqualification.

Although defendant alleges the disqualification is wholly disproportionate to his offense and he has already been sufficiently punished by having to stand trial for these two offenses and having been fined a total of $1,250, he has failed to show that the trial court has abused its discretion. The court noted that defendant was a seasoned politician and should have known better.

Defendant's subsidiary argument, that the disqualification portion of his sentence violates due process under the holding in *In re Perez* (1978) 84 Cal.App.3d 168 [138 Cal.Rptr. 32], because he was being punished for bad record keeping and making an unreported $4,000 cash expenditure, is not well taken. In *Perez*, the trial court imposed a more severe sentence to *punish* defendant for *uncharged acts* of perjury and subornation of perjury. The trial court in this case stated uncharged acts (i.e.: making political expenditures in cash and failing to properly

report political loans) could be taken into consideration in determining the seriousness of *the crimes for which he was convicted.* The record on appeal does not support defendant's claim that the trial court was unconstitutionally punishing him for uncharged acts.

### CANDIDATE'S COMMINGLING OF FUNDS

■ Finally, defendant contends that Government Code section 84100, subdivision (c), did not prohibit a commingling of campaign and personal funds *by candidates* and, in the alternative, that statute was unconstitutionally vague because it failed to give him fair notice of the crimes with which he was charged.

Government Code section 84100, subdivision (c) provided: "(c) All contributions received by a person acting as an agent of a candidate shall be reported promptly by such person to the candidate or any of his designated agents. All contributions received by a person acting as an agent of a committee shall be reported promptly by the recipient to the committee's treasurer or any of his designated agents. 'Promptly' as used in this section means not later than five days before the closing date of any campaign statement required to be filed by the treasurer, and immediately if the contribution was received less than five days before the closing date. *All contributions shall be segregated from and may not be commingled with any personal funds of the* recipient or any other person." (Italics added.)[2]

To aid us in our interpretation of the meaning of subdivision (c) of Government Code section 84100, we turn to an examination of the purposes of the Political Reform Act as stated in Government Code section 81002. Subdivision (a) of that section provides that: "Receipts and expenditures in election campaigns should be fully and truthfully disclosed in order that the voters may be fully informed and improper practices may be inhibited."

It can be logically inferred from this stated purpose that the drafters of the Political Reform Act meant to make the commingling of campaign funds and personal funds by a candidate a crime.

---

[2]Government Code section 84100 was repealed by Statutes 1979, chapter 779, section 4, and the underlined portion of this statute was reenacted as Government Code section 84307, entitled "Commingling prohibited," which provides: "No contribution shall be commingled with the personal funds of the recipient or any other person."

Government Code section 84100 is found in chapter 4 of the act, which is entitled "Campaign Disclosure." A prohibition against commingling facilitates complete and proper disclosure.

We do not find persuasive defendant's argument that the language "all contributions" refers only to contributions received by agents because (1) this subdivision is found in article 1 which is entitled "Organization of Committees" and section 84100 which is entitled "Treasurer; vacancy; contributions and expenditures; records" [West's Gov. Code] and (2) the last sentence of subdivision (c), which deals with commingling funds, comes after two sentences dealing with contributions received by persons acting as agents of candidates (sentence No. 1) and committees (sentence No. 2).

Aside from the fact that the last sentence of subdivision (c) specifically states that "all contributions" shall be segregated and is not limited by its terms to agents, the next portion of Government Code section 84100, subdivision (d) provides that "each *candidate*, treasurer, and elected officer" must keep detailed records. (Italics added.)

Furthermore, we note that this portion of subdivision (c) was reenacted last year in Government Code section 84307 in virtually identical language.

We find after examining the wording of Government Code section 84100 and considering its placement within the Political Reform Act of 1974, that it prohibited the commingling of campaign contributions and personal funds by candidates, as well as other persons, and gave candidates fair notice of crimes with which they might be charged. It was not unconstitutionally vague.

The judgment is affirmed.

McDaniel, J., and Morris, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 18, 1980. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.