Filed 12/16/13  P. v. Batta CA3

**NOT TO BE PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C070775 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F00731) |
| v. | |
| NASHWAN SAMIR BATTA, | |
| Defendant and Appellant. | |

A jury found defendant Nashwan Samir Batta guilty of 14 counts of sexual offenses on his three minor daughters.  Defendant committed three counts on his eldest daughter, five counts on his middle daughter, and six counts on his youngest daughter.[1]

---

[1] The prosecutor charged defendant with lewd acts with a child under the age of 14 (counts one through three); attempted lewd acts with a child under 14 (counts four and thirteen); forcible lewd acts with a child under 14 (counts five, six and eight through ten); misdemeanor annoying or molesting a child (counts seven, eleven and twelve); and lewd acts with a child under 15 and at least 10 years younger than defendant (counts fourteen and fifteen).  (Pen. Code, §§ 288, subds. (a), (b)(1) & (c)(1), 664/288, subd. (a), 647.6,

1

Of the five charged forcible lewd acts (counts five, six and eight through ten), count six was found to be forcible (§ 288, subd. (b)(1)); the rest were found to be nonforcible (§ 288, subd. (a)).  Defendant was sentenced to 28 years four months in state prison.

Defendant appeals, contending (1) the evidence is insufficient to support count thirteen; (2) the trial court erred in imposing a "full, separate, consecutive sentence" on count six; and (3) the trial court erred in imposing the upper term on count one.  He also raises ineffective assistance of counsel.  We disagree and shall affirm the judgment.

## FACTUAL BACKGROUND

Defendant is the father of A.B., N.B., and R.B.  At the time of trial, A.B. was 17, N.B. was 15, and R.B. was 13.

### Victim A.B.—Counts Thirteen through Fifteen

From an interview with an investigating police officer, an interview with a specialist at the Sexual Assault Forensic Evaluation (SAFE) Center, and trial testimony, the following facts emerged.

The first incident of sexual abuse occurred when A.B. was 11 years old.  After A.B. returned home from a field trip, defendant opened A.B.'s bedroom door, woke her up, and told her to "come out."  A.B. followed defendant to a different room and sat in a chair directly facing him.  Defendant wore only his boxers and pornography played on the computer.  At this time, defendant told A.B. that he loved her, took out his penis, and asked A.B. to touch and play with it (count thirteen—attempted lewd act).  A.B. said "no" and returned to her room, crying.

Other instances of sexual abuse occurred when A.B. washed dishes.  Defendant would approach A.B. from behind and rub his erect penis against her buttocks.  A.B. said

subd. (a)—further undesignated statutory references are to this code.)  The jury found defendant not guilty of count four (attempted lewd acts with a child under 14).

2

this happened "many times, at least six times" starting when she was 11 (counts fourteen and fifteen—lewd acts with a child under 15 and at least 10 years younger).

***Victims N.B. and R.B.—Counts One through Three and Five through Twelve***

In their SAFE interviews, N.B. and R.B. described separate occasions when defendant pressed his erect penis against their buttocks. Similar to their sister, N.B. and R.B. were washing dishes at the time. N.B. estimated this occurred three times before she turned 14 (counts eight through ten—lewd acts). R.B. estimated this occurred three to four times before she turned 12 (counts one through three—lewd acts).

Defendant also ordered R.B. to clean his bedroom while he exposed his penis, watched pornography, and masturbated (count seven—annoying/molesting a child).

A.B., the eldest sister, also revealed that she had awoken several times to find defendant naked or exposing himself in the bedroom that she shared with N.B. One time, A.B. observed defendant place his penis close to N.B.'s face while N.B. lay awake in her bed (count twelve—annoying/molesting a child).

In addition to these incidents, N.B. and R.B., during their SAFE interviews, described two other incidents. N.B. shared that defendant picked her up from a basketball game and drove an alternate route home. After N.B. got in the car, defendant exposed his penis and touched it (count eleven—annoying/molesting a child). R.B. shared that defendant once woke her in the middle of the night to kiss her forehead, neck, and breast (counts five and six—lewd act and forcible lewd act).

Shortly after the SAFE interviews, R.B. and N.B. contacted the investigating detective. The girls had not been entirely forthcoming because they felt pressured by defendant's family members. N.B. clarified that she and her sisters had seen defendant's penis and he masturbated in front of them on several occasions. R.B. clarified, as to the

breast-kissing incident, that defendant lifted her shirt and bra, held her down when she tried to push away, and sucked on her nipples (count six—forcible lewd act).

*Defense*

Defendant maintained that any inappropriate touching was accidental. He testified that the broken air conditioner and high temperature forced him to walk around in his boxers. Defendant denied exposing himself but conceded that he kissed R.B.'s chest ("Wherever I want to kiss her, I kiss her"). Furthermore, in closing argument, defendant emphasized the victims' inconsistent testimony to argue that the victims fabricated the sexual abuse allegations because defendant was too strict and controlling.

## DISCUSSION

### I. Sufficient Evidence Supports Count Thirteen

Defendant asserts there is insufficient evidence of count thirteen—attempted lewd act on A.B. (defendant asked A.B. to touch his penis). (§ 664/288, subd. (a).) The record refutes defendant's contention that his actions were simply preparatory. (*People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1322 (*Crabtree*).)

To determine the sufficiency of the evidence to support a criminal conviction, an appellate court reviews the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128; *People v. Mayfield* (1997) 14 Cal.4th 668, 790-791.)

"An attempt to commit a lewd act upon a child requires both an intent to arouse, appeal to, or gratify 'the lust, passions, or sexual desires of [the defendant] or the child' [citations] 'and . . . a direct if possibly ineffectual step toward that goal . . . .' " (*Crabtree, supra*, 169 Cal.App.4th at p. 1322.) To constitute an attempt, "[t]he act must

4

go beyond mere preparation, and it must show that the perpetrator is putting his or her plan into action, but the act need not be the last proximate or ultimate step toward commission of the substantive crime." (*People v. Kipp* (1998) 18 Cal.4th 349, 376.)

The prosecutor argued that count thirteen was supported by defendant's solicitation of A.B. to touch his genitals. Defendant claims such solicitation is insufficient for an attempt, citing *People v. La Fontaine* (1978) 79 Cal.App.3d 176, 180 ("the crime of attempt requires that a defendant's acts go beyond acts of preparation to commit a crime"). However, *La Fontaine* has effectively been limited by *People v. Memro* (1985) 38 Cal.3d 658 (*Memro*), which held that, " '[w]henever the design of a person to commit a crime is clearly shown, *slight acts done in furtherance of that design* will constitute an attempt, and the courts should not destroy the practical and common-sense administration of the law with subtleties as to what constitutes preparation and what constitutes an act done toward the commission of a crime.' " (*Memro,* at p. 698, italics added; see *People v. Ansaldo* (1998) 60 Cal.App.4th 1190, 1197 [noting the effective limitation by *Memro*].)

In this case, defendant's actions clearly demonstrated his lewd design and constituted an act done toward the commission of that crime. (*Memro*, *supra*, 38 Cal.3d at p. 698.) Wearing only his boxer shorts, defendant went into A.B.'s bedroom at night, woke her up, brought her alone into another room, played pornography, exposed his penis, and asked A.B. to play with it.[2] By isolating A.B. and asking her to touch his exposed penis, defendant took direct steps toward the commission of the lewd act. But for A.B.'s refusal to touch defendant's penis, the lewd act would have been completed.

---

[2] A.B. told a detective this version of events, and reiterated this version of events at her SAFE interview and in a recorded interview with law enforcement. At trial, A.B. initially testified that she "made up" this allegation. Upon being recalled at trial, A.B. testified that she did not fabricate the sexual abuse allegations, but had temporarily succumbed to family pressure.

5

As noted, whenever a defendant's design to commit a crime is clearly shown, slight acts done in furtherance of that design constitute an attempt. (*Memro*, *supra*, 38 Cal.3d at p. 698; *Ansaldo*, *supra*, 60 Cal.App.4th at p. 1197.)

Defendant relies on *Crabtree* to assert that defendant's "design steps" are insubstantial. While the evidence of "design" in *Crabtree* arguably is more substantial than here, here the evidence of design and the acts in furtherance of that design are sufficient to constitute an attempt. (*Crabtree*, *supra*, 169 Cal.App.4th at pp. 1322-1323 [rejecting a defendant's claim that his actions were merely preparatory when police found a massaging device, Viagra, condoms, bubble bath soap, and a bikini in the defendant's car as he planned to meet what he thought was a 13-year-old girl he had contacted online].)

## II. The Count Six Sentence Was Legally Authorized

Defendant contends the trial court imposed a legally unauthorized sentence when it selected a "full, separate, consecutive six-year" sentence on count six (forcible lewd act), because the relevant offenses "did not involve [as required] the same victim on the same occasion." He is wrong, because at least two offenses (counts five and six) involved the same victim on the same occasion.[3]

Section 667.6 , subdivision (c), which allows for a full, separate, and consecutive sentence, provides as pertinent, "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) [of section 667.6 (as pertinent here, the forcible lewd act of count six)] *if the crimes involve the same victim on the same occasion. A term may be imposed*

---

[3] A claim of unauthorized sentence is reviewable on appeal even absent an objection below. (*People v. Scott* (1994) 9 Cal.4th 331, 354 (*Scott*).) Defendant's imbedded claim here—the trial court's reasons for imposing the consecutive sentence were erroneous—is not preserved for review, given his failure to object below. (*Id.* at p. 353.)

*consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e).*"  (Italics added.)

The plain language of the statute requires only one offense specified in section 667.6, subdivision (e) ("if a person is convicted of at least one offense specified in subdivision (e)").  Here, defendant was found guilty in count six of one offense specified in subdivision (e), namely, a "[l]ewd or lascivious act, in violation of subdivision (b) of Section 288," i.e., a forcible lewd act.  (§§ 667.6, subd. (e)(5), 288, subd. (b)(1).)  The victim in count six was R.B.  Defendant was also found guilty in count five of another crime involving "the same victim on the same occasion," R.B., namely, a lewd act, in violation of subdivision (a) of section 288 (a nonforcible lewd act).  (§§ 288, subd. (a), 667.6, subd. (e).)  Both of these counts occurred on the same occasion—defendant woke R.B. in the middle of the night and kissed her neck (count five) and then held her down and kissed her breast (count six).  Thus, because there was "at least one offense specified in subdivision (e)" of section 667.6 that involved the same victim on the same occasion as another one of defendant's crimes (count five), the statute is satisfied.

Because the statutory language is satisfied, it does not matter, as defendant apparently suggests, that *all of the crimes* of which he was found guilty did not take place on the same victim on the same occasion.  Defendant cites to *People v. Goodliffe* (2009) 177 Cal.App.4th 723 for this proposition.  But in *Goodliffe*, there was no evidence that *any* of the counts involved the same victim on the same occasion.  (*Id.* at p. 727 ["The People concede that [the] defendant's crimes did not involve the same victim on the same occasion"].)

### III.  Upper Term on Count One

Lastly, defendant contends the trial court erred in imposing the upper term sentence on count one (penis against R.B.'s buttocks).  He argues (1) the court failed to make on-the-record findings as to all the elements of a perjury violation; (2) there is no

necessary nexus (to him) if his family suborned perjury; and (3) he received ineffective assistance of counsel. We reject each argument in turn.

## A. Background

"The [sentencing] statutes and . . . rules generally require the [trial] court to state 'reasons' for its discretionary [sentencing] choices [such as imposing an upper term] on the record at the time of sentencing. [Citations.] Such reasons must be supported by a preponderance of the evidence in the record and must 'reasonably relat[e]' to the particular sentencing determination." (*Scott*, *supra*, 9 Cal.4th at pp. 349.) We review a trial court's discretionary sentencing choices under an abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

At sentencing, the trial court initially found that defendant "suborned perjury and committed perjury" and accordingly sentenced him to the upper term of eight years on count one. Defendant did not object to this reason for this sentence.[4] Rather, defense counsel argued that the upper term seemed "entirely disproportionate" to cases involving other crimes such as involuntary manslaughter.

In response to this argument, the trial court stated its findings of three aggravating circumstances: (1) Defendant dissuaded witnesses from testifying; (2) the manner in which the crimes were carried out indicated planning; and (3) defendant, as father of the victims, took advantage of a position of trust. (Cal. Rules of Court, rule 4.421(a)(6), (8), (11).)[5] The trial court also found one mitigating circumstance—defendant's insignificant

---

[4] Consequently, the claim is not preserved for review because defendant did not object on these grounds at sentencing. (*Scott*, *supra*, 9 Cal.4th at p. 353.) Even assuming the claim is preserved, it is without merit, as we shall explain.

[5] Further rule references are to the California Rules of Court.

prior criminal record—but ruled that the aggravating factors outweighed this mitigating factor. (Rule 4.423(b)(1).)

The issues on appeal involving this upper term likely stem from the trial court's stating initially that the upper term was imposed because defendant "suborned perjury and committed perjury," rather than judicially specifying, at the outset, the three aggravating factors the court found. The trial court later clarified that the upper term was imposed because defendant "dissuaded witnesses from testifying and illegally interfered with the judicial process" (the first aggravating factor), as well as the two other aggravating circumstances. The trial court further explained, "defendant and his family members put pressure on these poor girls to come into this court and lie" and "defendant attempted to interfere with the judicial process by attempting to suborn perjury from the victims in this case."

## B. Perjury Finding

Defendant contends the trial court needed to make an on-the-record finding as to all the elements of perjury to support the upper term sentence on count one. He is wrong. In imposing this upper term, the trial court did not find that defendant committed perjury, despite its initial statement ("I find that [defendant] suborned perjury and committed perjury"). Rather, the trial court clarified that the upper term was imposed because defendant illegally interfered with the judicial process by suborning perjury. The two findings, committing perjury versus suborning perjury, are significantly different.

Defendant's reliance, therefore, on *People v. Howard* (1993) 17 Cal.App.4th 999 and *United States v. Markum* (10th Cir. 1993) 4 F.3d 891 is misplaced. In those cases, the defendant testified, the jury found him guilty, and, subsequently, the trial court erroneously imposed an upper term based on an "implied finding" of perjury. (*Howard*, *supra*, 17 Cal.App.4th at p. 1002; *Markum*, *supra*, 4 F.3d at pp. 897-898.) In such circumstances, the sentencing judge may be required to make on-the-record findings

9

encompassing all the elements of a perjury violation; otherwise, a defendant may be dissuaded from exercising his constitutional right to testify. (*Howard*, *supra*, 17 Cal.App.4th at pp. 1004-1005; U.S. Const., 6th Amend.) Here, the aggravating factor is not based on *defendant's* testimony, but on his influence over the *victim's* false testimony. The record does not reflect a finding that defendant committed perjury.

The appropriate inquiry is whether the trial court's reasoning is supported by a preponderance of the evidence in the record. (*Scott*, *supra*, 9 Cal.4th at pp. 349-350.) We find that it is. A.B., the oldest victim, visited defendant in jail before trial. During this visit, defendant told A.B. that he loved her and would do anything for her. Against this backdrop, defendant asked A.B. to say that she lied about the sexual abuse allegations in order to "get some freedom" at home. He further asked A.B. to lie to the defense investigator and to write a favorable letter to his attorney (which the family would edit).

After the jail visit, A.B. provided a statement, signed under penalty of perjury, to the defense investigator and wrote the requested letter. The letter said, "The reason why I did all of this was because I wanted freedom, and [defendant was] controlling, and I didn't like it." A.B. later testified that such statements, like those made to the investigator and found in the letter, were not true. On recall at trial, A.B. added that she did not tell the truth at her initial trial appearance when she stated that she "made up" the sexual abuse allegations.

The record shows that defendant pressured A.B. to lie to the defense investigator, write a false letter, and commit perjury on the stand. Accordingly, the trial court did not abuse its discretion in imposing an upper term based on the fact that defendant interfered with the judicial process. Even assuming there was not substantial evidence in the record to support this aggravating factor, the trial court found two additional factors in aggravation. Defendant does not question these two factors on appeal, and only one

10

aggravating factor is necessary to impose an upper term sentence. (*People v. Osband* (1996) 13 Cal.4th 622, 732.)

### C. Necessary Nexus

Defendant next claims that even if his family suborned perjury, the record does not support "the necessary nexus of [defendant's] authorization" to impose the upper term on count one. Defendant points to the trial court's discussion of "family members" to argue that the court must find a nexus showing that defendant exercised control over his family members' actions. Defendant again muddles the trial court's rationale for selecting the upper term sentence.

While it may be true that defendant's family exerted pressure over the witnesses, the trial court imposed the heightened sentence because of *defendant's* actions ("defendant attempted to interfere with the judicial process by attempting to suborn perjury from the victims in this case"). Under rule 4.420, nothing more is needed [the sentencing judge may consider circumstances in aggravation or mitigation when selecting an upper, lower, or middle term]; *People v. Steele* (2000) 83 Cal.App.4th 212, 226 ["the finding of even one factor in aggravation is sufficient to justify the upper term"].) As discussed previously, the record supports the finding that defendant interfered with the judicial process.

### D. Ineffective Assistance of Counsel

Defendant lastly claims that by failing to object to the "perjury finding" at sentencing, his trial attorney rendered ineffective assistance of counsel. This claim is without merit.

"To establish ineffective assistance of counsel, a defendant must show ' " 'not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice.' " [Citation.] Prejudice occurs only if the record demonstrates "a reasonable probability that, but for counsel's unprofessional

11

errors, the result of the proceeding would have been different." ' " (*People v. Young* (2007) 156 Cal.App.4th 1165, 1172.) If appellant fails to establish the prejudice component, the court need not decide the issue of counsel's alleged deficiencies. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.)

In this case, neither prejudice nor incompetence has been established. The court noted three separate aggravating circumstances; therefore, the court could have selected the upper term based on the two other factors. (*Osband*, *supra*, 13 Cal.4th at p. 732; rule 4.421(a)(8), (11).) It is highly unlikely that a different result would have occurred had counsel objected as defendant contends; thus, defendant cannot show prejudice.

In any event, defense counsel cannot be deemed to have fallen below the objective standard of reasonableness in failing to object to the "perjury finding." (*People v. Stanley* (2006) 39 Cal.4th 913, 966.) The trial court did not find that defendant committed perjury; rather, as explained, the court implemented a sentencing scheme that was well within its authority.

## DISPOSITION

The judgment is affirmed.

                                                          BUTZ           , J.


We concur:


    BLEASE        , Acting P. J.


    HULL          , J.


12